First of all, I'd like to thank the St. Thomas School of Law in Minneapolis, Minnesota for providing us with certified law students, appearing pro bono, to inform us of this case. And thank you very much for coming all the way out here. I hope the weather is better here than it is back in Minneapolis this time. Please proceed. May it please the Court, my name is Kaitlin Drogmuller, and I, along with my co-counsel, Ms. Catherine Underwood, am a certified law student representative appearing today on behalf of Appellate Oray Fifer. Our supervising attorney, Professor Gregory Sisk, is here with us today and is seated at council table. With the Court's permission, I would like to reserve four minutes for my co-counsel's rebuttal. This case is about a man who was shot in the head and neck six times by a correctional officer using dangerous, less lethal munitions. Two shots struck the man, Mr. Fifer, while he was down on all fours, on his hands and knees, and one of the shots struck him directly in the eye, knocking him unconscious and permanently damaging the eye. We ask this Court to reverse and remand today because the government cannot meet its burden of proof in establishing its affirmative defense of justification when viewing the facts in the light most favorable to Mr. Fifer. Neither the government nor the district court acknowledged this burden of proof. Furthermore, under the standard adopted by this Court in Snell v. Bell Helicopter Textron, summary judgment is only permitted on an affirmative defense when the defense has been proven so convincingly that no reasonable trier of fact could fail to find the defense had been established. Because the government here could not prove that it was so reasonable and so necessary to repeatedly target Mr. Fifer in the head, even after he was down on his hands and knees, that a reasonable trier of fact would be compelled to find him justified, summary judgment was inappropriate. You say that there was evidence in this case that all six shots reached Mr. Fifer after he was down on his hands and knees in response to an order by an officer? Your Honor, six shots struck him in the head and neck throughout the entire series of events. But he wasn't on his hands and knees the whole time when he was hit in the head. You're correct, Your Honor. He was down for three of the final shots, including the shot that damaged his eye. Was he on the second floor and were the shots being made from the first floor? Yes, Your Honor. That's our understanding of the case. Mr. Fifer was attempting to comply with the only order he heard issued during this series of events, which was to return to your cell. That is what he has consistently testified to, and both correctional officers and inmates acknowledge that that was an order that was issued. Correctional officers also say that they issued orders to get to the ground, but Mr. Fifer did not hear that order. And when reviewing the facts in the light most favorable to him, he was complying with the only lawful order that he heard issued, which was to return to his cell. So he had climbed the one flight of steps up to his cell and was removed from the riding area, was near no other inmate or correctional officer, was not damaging any prison property, and posed no threat to anybody when these six shots hit him as he was already removed from the scenario. Do you believe that the immunity applies to this particular officer? Your Honor, our position is that this is not an immunity case. This is a justification case. So to invoke any sort of immunity here, the government has to prove that they were justified in using their force. And as we extensively briefed in our briefing, there are three possible avenues for a legal justification defense under Arizona law. And no matter which one applies, a standard of reasonable necessity applies. And under the facts of this case, including most importantly the fact that Mr. Fifer was down on all fours, on his hands and knees when these final three shots were fired, when he was already removed from the riot situation and was not a participant, that there is no possible way that it can be so reasonable and so necessary to repeatedly continue shooting him in the face that the government would be justified, particularly at summary judgment. I imagine that there was, I mean, this is a chaotic situation. There's a riot happening at the time. People are running from all sorts of places. The officers, wouldn't the government argue that we're reasonable in trying to control the situation? Your Honor, the government appears to be trying to argue that when a riot occurs, they are then justified in using any force because, as you said, it's a chaotic situation. However, that would essentially grant them blanket immunity here, which is not what the statute or Arizona law does. The government needs to be reasonable and necessary in its use of force throughout the entire situation. And because here Mr. Fifer was again removed from the rioting situation, he was complying with a lawful order issued to him by the correctional officers. It could not be reasonable and necessary to repeatedly target him, particularly at summary judgment when the government has the burden of proof. Furthermore, are you are you arguing that you ought to be allowed to amend to state a claim in negligence? Your Honor, yes, that's our position as well. Mr. Fifer has repeatedly throughout his case when he was appearing pro se, acknowledged that the government issued conflicting orders here. And he's emphasized this in his response to the government's motion for summary judgment in his motion for reconsideration that this was the issue and that all issues were not adjudicated. He is not only alleging that there was a battery, but that the government was essentially negligent without using the term negligence because he is, again, a pro se prisoner plaintiff. This was not argued. Negligence was not argued as a motion of summary judgment, was it?  Your Honor, however, because the Ninth Circuit has a liberal construction standard for both complaints and this continues into the summary judgment stage, we contend that the fact that Mr. Fifer's third cause of action in his complaint omitted the word deliberate and intentional as his other two causes. He was attempting to state a negligence claim there and then when he continued to focus on the fact that these conflicting orders were issued and that was the cause of his damages, the government and the court should have construed this as a negligence complaint as the government appeared to do so by acknowledging in their answer that the government was not acting negligently. I'd like to reserve the remaining time for my co-counselor's rebuttal. We'll give you four full minutes. That took you over here. Thank you, Your Honor. Good morning, Your Honors. Emory Hurley, United States Attorney's Office for the District of Arizona, appearing for the defendant. Your Honor, this was a case in which a prison race riot was happening and plaintiff's reaction to the riot was to put on his boots and go down onto the main day room floor where the riot was centered. When prison officials responded to the riot, they had to take into consideration the very real risk that the riot presents to other inmates, that it presents to staff, and also then take into consideration the potential risk of harm that the force that they used to suppress the riot might have with regard to the inmates. Counsel, but this particular individual is on the second floor. Hadn't he left the first floor, as you've indicated? He left the first floor, but by the time he left the first floor, once he was running up the stairs, the officers didn't know what he was up to. There's no way that they can know what's in his mind. What they were trying to do was stop the situation as quickly as they could. They have to restore order. They have to pause the action because somebody who's running after a riot, and the orders were given. Was one of the orders go back to your cells? The order was actually, the order was go to your cells, and the orders were actually go to a cell as well. And in fact, the plaintiff, when he first filed his request for administrative remedy, repeatedly characterized the order as return to a cell. This is at the supplemental excerpt of record at page 141, 142, and 144. He says that officers entered the unit and instructed inmates, quote, to either get to a cell or get on the ground. And he repeats that exact order over and over throughout his request for administrative remedy. It was later that he started characterizing it as a request to go to your individual cells, which is how he was phrasing it to justify his actions. What he was doing was as he was running away from the riot because the riot was on the first floor. Well, the main part of the riot was on the first floor. By going up the stairs, they don't know if he is trying to dispose of contraband, get in one last blow against some inmate that had gone up on the second floor earlier. The officers don't know why he's running. What they do know is they've issued an order for everybody to get to the ground. The plaintiff doesn't contest the fact that the order had been given to get to the ground. And, in fact, he simply says he didn't hear the officer. The one officer explains that he ordered Pfeiffer to get to the ground, but Pfeiffer says he didn't hear it. But you had conflicting orders. You had an order, get to the ground, and then an order, get to a cell or get to your cell. Your Honor, most of the inmates went to the ground. And there were inmates who simply went into a cell, and there were inmates obviously who understood the order to get to any cell. Pfeiffer actually had his cellmate and a different inmate that had gone into Pfeiffer's cell after the order had been given. So, clearly, that other inmate understood just go to a cell. Pfeiffer's action of running up the stairs was an equivocal action, as Whitley v. Albers recognized. Although he was running from the main focus of the riot, he was not complying with the orders. He wasn't getting in a cell. He wasn't getting on the ground. He was running, and there was no way for them to know what was in his mind. Let's say that they were okay as to the first three shots. Counsel indicated that he was on his knees on the ground when he was shot three more times, including the last shot, which took the sight out of his eye. When he got to the top of the stairs, he explains that at the top of the stairs, he was hit in the back of the head. His response to that was not to get down on the ground, but to turn, cover his eye, and continue running. He then was hit in the back of the hand, and his reaction was again to continue running. He saw rubber balls bouncing off of a wall. One of them, he says, hit him in the neck, and he then decided perhaps he would get down. He wasn't on all fours. According to Pfeiffer's own statement, he was on, he had one knee down. As I got down on my knees, I think I was on one knee down and one hand down, and that's when I got, that's when I got hit in the forehead, the cheek, and the eye. But I believe there was a declaration by another individual who witnessed this that indicated that he was on all fours. Isn't that the case? That's the case. There were others who said that he was on all fours, but in this case, the statements, Your Honor, the statements that we're considering are just the statements of the plaintiff himself, the statements that the plaintiff can't take issue with. So these are the plaintiff's own words, either in his request for administrative remedy or in his deposition transcript. But at the stage of summary judgment, aren't those facts important? Your Honor, the only facts that have to be determined are the material facts, and as long as the material facts demonstrate that the justification applies, then the court was justified in granting summary judgment in favor of the defendant. The easiest way for us to approach what are undisputed facts is to look at the facts that are presented by the plaintiff himself. Those are the facts that the plaintiff cannot dispute. Yes, he can. The plaintiff can't make a declaration saying, I was standing up or I was on all fours and deposed that he was standing up. The deposition trumps his declaration, but it doesn't trump the declaration of other witnesses. Other witnesses could declare and create an issue of fact as to whether he was on all fours. Your Honor, even if he were on all fours, the indication is that as he was going down is when he was shot. At the time the officer shot at him, he was not flat on the ground. He's on an upper tier as the officer's on a lower tier. He's presenting a foreshortened image to the officer, and the officer is simply trying to get him to comply. The officer is using exactly the amount of force necessary, because this amount of force was insufficient to get him to comply at the top of the stairs and as he first started running. It was only after a couple of shots that he decided that he would finally get down on the ground, and the whole point is they have to freeze the action. They have to bring everybody to a stop before somebody can take one more aggressive action, settle one more score against another inmate. That's the whole point. Your Honor, what I particularly want to touch on, if I may, is this one point. There's a disagreement as to whether ARS 403, which is the justification statute, applies to private or public contractors, whether it's only for corrections officers. It's clear from the language that it doesn't specify. It refers to the superintendent of a prison or other prison officials may use force for the preservation of peace to preserve order and prevent the commission of a misdemeanor or a felony. The language of 403 doesn't specify private or public. Even if it was only for public, our position is that reading 2674 of the Federal Torts Claims Act allows any law enforcement agency to avail themselves of law enforcement-specific privileges, because as the South Seda decision cited by plaintiff, which was a district court case, held, Olson did not specifically preclude the use of law enforcement-specific affirmative defenses, and the language of the statute itself does not preclude these. The first paragraph, if we follow Olson and we interpret words to mean what they say, then the first paragraph of 2674 explains the United States shall be liable in the same manner and to the same extent as a private individual. But the third paragraph talks about the fact that the defenses are available. The United States shall be entitled to assert any defense based upon judicial or legislative immunity, which otherwise would have been available to the employee. It doesn't say it's only for defenses that are available to private citizens. It's any defense that could be available to the employee. So we would maintain that South Seda was decided correctly. We would also cite the court to Villafranco, which was a case, again, cited by appellant, where the Fifth Circuit found that although immunity was not available to the United States in an FTCA case, they would still be able to avail themselves of the Texas statute, which authorizes law enforcement privileges, and that could still be argued by the United States because the actors of the United States were law enforcement. Even if we conclude that it does apply, isn't there a standard of reasonableness that we have to apply to their actions? The standard of reasonableness is, unlike their assertion that carte blanche is granted to the prison to do whatever they want, the prison is still constrained by the Eighth Amendment. There's no the statute actually does not contain the word reasonableness. In the Bajorquez case, the court weighed in on the Arizona court weighed in on the instructions that were given and said that a prisoner would be entitled to assert self-defense once the level of force became that which is illegal. That would mean in violation of the Eighth Amendment. So they're still constrained by the Eighth Amendment. So during the riot, they have to be able to exercise the force necessary to quickly restore order, but it still has to be for the purpose of restoring order, which in this case it was. They weren't shooting at Pfeiffer for no good reason. They were shooting at him because he wasn't flat on the ground, which is what the command was, and there was no way to tell that he was doing anything other than defying the orders to freeze the action and stop the riot. So your reading of 13-403-2 is the superintendent or other entrusted official of a jail can use any force whatsoever to maintain order or discipline so long as it doesn't violate the Eighth Amendment? Well, the Eighth Amendment would be the standard, yes, that they can't violate. That's deliberate indifference, cruel and unusual punishment. That's a higher standard. It gives greater flexibility to law enforcement agencies than plain reasonableness. It does, Your Honor, and it goes back to the reasoning that the Supreme Court used in Whitney v. Albers, which is really the touchstone for prison riot situations. The decisions that they are making, the decision of what force to use and how to deploy the force is a decision that is necessarily made very, very quickly under a tremendous amount of pressure and with no opportunity for a second chance. The Court refers to it as the luxury of a second chance, because it is an imperative of the prison officials to bring the riot to a halt because if they don't, a scuffle can quickly become Attica or New Mexico State Prison or some other horrible, violent, protracted riot if they can't restore order as promptly as they can. Thank you very much. May it please the Court, my name is Catherine Underwood and I am a certified law student representative appearing today on behalf of Appellant O. Ray Pfeiffer. On rebuttal, I would like to make three points. The first deals with the government's counsel's contention that Mr. Pfeiffer was not down on all fours, the second responds to the 13-4032 argument, and the third distinguishes our case from Whitley. As Your Honors noted, there are two witnesses on the record who said that Mr. Pfeiffer was in fact down on all fours. Government's counsel wants to say that because Mr. Pfeiffer never said that he was down on all fours, that that is somehow relevant. The two witnesses were two prison officers. Sorry, two prisoners. I believe one was Collins and I don't remember the others, but their depositions are found, or their affidavits are found on page 14 of our excerpt of record. Speak up, page 14 of your? Yes, on the excerpts of record. The reason why Mr. Pfeiffer did not know if he made it all the way down on all fours is because he was knocked unconscious by the shot, and so he doesn't remember, and he can't remember because he wasn't conscious for the final shot. The second point that I would like to make is that 13-4032 does involve a reasonable necessity standard, and the Arizona Supreme Court in State v. Bajorquas said that that amount of physical force necessary is the force that is justified in that correctional officers may use. Also, TECL specifically said that no state correctional officer statute can be invoked by the government. Just Fisher and Kleinfeld on the Ninth Circuit, neither one of them, or excuse me, Tashima and Fisher, neither one of them would have allowed a state statute to be invoked by the government on this FTCA case. Is it your point, Ms. Underwood, that we have a binding decision by the Ninth Circuit which says that this Arizona statute cannot be applied in a federal tort claim act case? And if so, what's the name of the case? TECL, the United States. And it is a plurality opinion, but when you take two of the three opinions together, it reads that the government may not invoke a state statutory offense. Only federal would be the most that they could possibly invoke as you cobble the opinions together. Say that again slowly. There's a plurality opinion, and you want us to take the plurality opinion and read another concurring opinion, I suppose under the Marx analysis, to find out the narrowest grounds on which there are concurring opinions. And the decision is what? So there were three opinions in TECL. Judge Tashima said that no statute could be invoked in FTCA claims for officers of the government, and that common law was the only standard that would apply. Judge Fisher articulated that if there was a more specific federal statute that granted a privilege to officials, officers, that the government could invoke that. But that's not at issue in our case because we don't have a federal statute. We only have a state statute that the government is trying to invoke. And Judge Kleinfeld said that he agreed with Judge Fisher that only a statute would be able to provide a different standard. Only a federal statute. He didn't say specifically federal, but Fisher specifically emphasized it was a federal statute. And he simply said that he agreed with Fisher. I see my time has expired. All right. Case of Pfeiffer v. The United States will be submitted. And again, our thanks to the law school, the university at the St. Thomas School of Law in Minneapolis. Thank you for coming out.
judges: Fernandez, Bea, Mendoza